## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02314-RPM-MEH

NETFRONTS, INC., A UTAH CORPORATION, A RESIDENT OF COLORADO

    Plaintiff(s)

v.

WEBUY HOSTS, INC., A WASHINTON CORPORATION, AND
NATHAN OULMAN

    Defendant(s)/Third-Party Plaintiff

CHRIS MARKS, A RESIDENT OF COLORADO

    Third-Party Defendant

___

### DEFENDANT NATHAN OULMAN'S FIRST AMENDED ANSWER, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT
___

Defendant Nathan Oulman ("Defendant"), submits his First Amended Answer, Amended Counterclaim and Third-Party Complaint as follows:

### ANSWER AND DEFENSES

1.    Defendant admits the allegations in the following paragraphs of the Complaint: 1, 3 (to the extent WeBuyHosts is a Washington corporation), 6, 8 (to the extent that Mr. Oulman was involved in WeBuyHosts), 9, 13.

2.    Defendant denies the allegations in the following paragraphs of the Complaint: 2, 3 (regarding the registered agent), 4, 5, 7, 10, 11, 15, 20, 21, 23, 24, 25-29, 30-34, 35-42, 43-52, 53-58, 59-62, and 63-67.

3.      Defendant has insufficient present knowledge and information upon which to form a belief as to the truth of the following paragraphs of the Complaint, and therefore denies the same and holds Plaintiff to strict proof thereof: 12, 14, 16, 17, 18, 19, and 22.

4.      Defendant denies the Plaintiff's prayers for relief, and all allegations of the Complaint not specifically admitted.

## DEFENSES

1.      Plaintiff's Complaint fails to state a claim against Defendant upon which relief can be granted, either in whole or in part.

2.      Plaintiff's claims may be barred by the applicable statute of limitations.

3.      Plaintiff's damages, if any, were the proximate result, in whole or part, of Plaintiff's failure to reasonably mitigate its damages.

4.      Plaintiff's claims are barred for failure of consideration and lack of diligence.

5.      Plaintiff's claims are subject to and barred by the statute of frauds and parol evidence rule.

6.      Plaintiff has waived, or is estopped from asserting, its claims.

7.      Plaintiff's claims are barred by its prior breach of material contract terms and conditions precedent.

8.      Plaintiff's claims are barred by its breach of various notice and reporting requirements.

9.      Plaintiff's unclean hands and other instances of culpability preclude any claim of entitlement by Plaintiff to relief in equity.

10.     Release, prevention of performance, and accord and satisfaction.

11. Mr. Oulman is entitled to a set off for the damages attributable to Plaintiff and Chris Marks for the theft and fraudulent use of Mr. Oulman's Social Security Number for the purposes of committing tax fraud and attributing income that Plaintiff and Chris Marks received rather than Nathan Oulman.

12. Fraud.

13. Illegality.

14. Estoppel.

15. Inducing breach by conduct.

16. Impossibility of performance.

17. Defendant respectfully reserves the right to revise, expand, or reduce its affirmative defenses as investigation and discovery in this action makes appropriate and proper.

**DEFENDANT DEMANDS A TRIAL BY A JURY ON ALL ISSUES SO TRIABLE**

**DEFENDANT NATHAN OULMAN'S COUNTERCLAIMS AND THIRD-PARTY COMPLAINT AGAINST NETFRONTS, INC. AND CHRIS MARKS**

1. Chris Marks is the owner of Netfronts, Inc.

2. Defendant Chris Marks is a resident of Colorado.

3. Netfronts has a principal place of business at 1801 Wynkoop Street, #707, Denver, Colorado 80202. Thus, Plaintiff Netfronts is a Colorado Resident for purposes of evaluating diversity jurisdiction.

4. Plaintiff has alleged that jurisdiction and venue are proper in this Court. Defendant asserts, however, that the Colorado State Court, Denver District Court, should be vested with jurisdiction over Netfronts and Mr. Marks because they committed a tort and the other relevant actions in Denver County, State of Colorado. As Mr. Marks is an indispensable

party and Colorado resident, there is not complete diversity for purposes of federal diversity jurisdiction.

5. The venue of this action should be in Denver County because the cause of action arose in Denver County and because Netfronts and Mr. Marks committed torts and performed all relevant acts in Denver County.

6. WeBuyHosts, Inc.'s assets were sold to Netfronts and Mr. Marks through a contractual agreement entered in December 2010.

7. Netfronts and Mr. Marks did not acquire Mr. Oulman's Social Security Number as part of the sale or Mr. Oulman's PayPal Account.

8. Per the agreement, Netfronts and Mr. Marks were required to take over and process WeBuyHosts' clients and run those clients' payments thru their own accounts.

9. A PayPal Account is established and identified with someone's Social Security Number.

10. Prior to the sale of WeBuyHosts, Inc.'s assets, Mr. Oulman had a significant amount of customer subscriptions that operated through his PayPal Account. Mr. Oulman's customers would pay for services directly through Mr. Oulman's PayPal Account.

11. After the sale of WeBuyHosts' assets, Mr. Oulman gave Netfronts and Mr. Marks' access to Mr. Oulman's PayPal Account to manually cancel the subscriptions and shift the subscriptions to Plaintiff's PayPal Account. To accomplish the transfer, Netfronts and Mr. Marks only had to send an email to each customer that provided a link to Netfronts and/or Mr. Marks' PayPal Account.

12. In January 2011, Netfronts and Mr. Marks, however, decided against changing the subscriptions so that the subscriptions would process through Mr. Mark's PayPal Account rather

than Mr. Oulman's PayPal Account. Instead, Netfronts and Mr. Marks went into Mr. Oulman's PayPal Account and changed the bank account where PayPal would deposit the customers' payments. Netfronts and Mr. Marks inputted their bank account information to receive the customers' subscription payments. In addition, Netfronts and Mr. Marks then stole Mr. Oulman's PayPal Account and exerted control over the account going forward to the exclusion of Mr. Oulman without Mr. Oulman's authorization.

13. In January 2011-2012, Netfronts and Mr. Marks's committed identity theft, tax fraud, and engaged in the fraudulent use of Mr. Oulman's Social Security Number and identity in order to process income and hide the fact that the income went to Netfronts and Mr. Marks.

14. Continuously throughout 2011-2012, Netfronts and Mr. Marks' then processed their client's payments through Mr. Oulman's Paypal Account, but deposited the client payments into Netfronts and Mr. Marks' Wells Fargo Savings Account #9104.

15. Netfronts and Mr. Marks utilized Mr. Oulman's PayPal Account, identity and Social Security Number to falsely attribute the income to Mr. Oulman's Social Security Number on at least 24 occasions, including $2,373.38 in January 2011, $2,216.67 in Feb. 2011, $2,043.25 in March 2011, $2,094.21 in April 2011, $1,949.50 in May 2011, $1,703.56 in June 2011, $1,942.83 in July 2011, $1,832.98 in August 2011, $2,092.81 in September 2011, $1,750.75 in October 2011, $1,704.65 in November 2011, $1,252.93 in December 2011, including $1,273.79 in January 2012, $1,180.55 in Feb. 2012, $1,056.22 in March 2012, $1,128.42 in April 2012, $926.62 in May 2012, $827.00 in June 2012, $899.24 in July 2012, $882.39 in August 2012, $1,085.08 in September 2012, $612.01 in October 2012, $686.63 in November 2012, $634.93 in December 2012.

16.     Consequently, PayPal Inc. generated Form 1099-K that documented the income and attributed it to Mr. Oulman of $22,960.52 in 2011 and $11,192.88 in 2012. In 2012 and 2013, the 1099s were then sent to Netfronts and Mr. Marks' address at 1801 Wynkoop St., #707, Denver, Colorado 80202 with Nathan Oulman's named listed as the Payee. Upon receipt of the 2011 and 2012 1099s, Netfronts and Mr. Marks concealed this information from Mr. Oulman to hide their theft and misuse of Mr. Oulman's PayPal Account, identity, and Social Security Number.

17.     Thus, Netfronts and Mr. Marks directed PayPal to direct all payments to their bank account while attributing those payments to Mr. Oulman's Social Security Number. Netfronts and Mr. Marks continued to operate in this fraudulent manner for 2 ½ years, from 2011 through March 17, 2013. As a result, Netfronts and Mr. Marks ran over $34,153.40 of income through the PayPal Account under Mr. Oulman's Social Security Number from 2011-2012.

18.     On March 17, 2013, PayPal's Fraud Investigation Department discovered Netfronts and Mr. Marks' fraudulent activity, which caused PayPal to cancel all of the active subscriptions associated with Mr. Oulman's Account. Afterward, Netfronts and Mr. Marks then sent an email to the holders of the canceled subscriptions and switched them to Mr. Marks' account.

19.     Thus, Netfronts and Mr. Marks engaged in the fraudulent conduct for 2 ½ years and Mr. Oulman's 2013 PayPal 1099 will again attribute additional income to Mr. Oulman that went to Mr. Marks. Consequently, Netfronts and Mr. Marks stole Mr. Oulman's PayPal Account, Social Security Number, identity, committed tax fraud, and attributed income to Mr. Oulman to avoid their income tax liability.

20. The fraud investigation revealed that Netfronts and Mr. Marks may have engaged in this fraudulent conduct with other separate customers' accounts.

21. Upon information and belief, Netfronts and Mr. Marks stole and fraudulently used the Social Security Numbers and PayPal Accounts of other people/entities to run Netfronts, Inc.'s and Mr. Marks' business income under those other individuals' PayPal Account and Social Security Numbers for the purpose of committing tax fraud and hiding Netfronts and Mr. Marks' true business income.

22. Mr. Oulman's damages are in excess of $100,000.

### CLAIMS FOR RELIEF

(Breach of contract against Netfronts, Inc.)

23. Mr. Oulman incorporates all prior allegations into this paragraph.

24. Netfronts entered an agreement.

25. Netfronts breached the agreement.

26. Mr. Oulman performed all of his obligations under the agreement.

27. Netfronts' actions constitute a breach of the covenant of good faith and fair dealing, including the stealing and unlawful use of Mr. Oulman's PayPal account and identity.

28. Netfronts caused Mr. Oulman damages through its breach.

### CLAIMS FOR RELIEF

(Civil Theft § 18-4-405 and Fraud against Chris Marks and Netfronts)

29. Mr. Oulman incorporates all prior allegations into this paragraph.

30. To induce Mr. Oulman and WeBuysHosts to sell the assets, Netfronts and Chris Marks represented that they would change over the customer subscriptions to Netfronts' and Chris Marks' accounts.

31. Instead of doing this, from January 2011 – March 2013, Netfronts and Chris Marks, knowingly obtained and exercised control over Mr. Oulman's PayPal Account, Social Security Number, and identity and did so without Mr. Oulman's consent.  Mr. Marks and Netfronts then barred Mr. Oulman from accessing his PayPal Account and exerted control over Mr. Oulman's PayPal Account to the exclusion of Mr. Oulman.

32. Then, throughout 2011-2012, Mr. Marks and Netfronts processed business income under Mr. Oulman's identity and PayPal Account even though the income went to them. Mr. Marks' and Netfronts' failure to disclose this information was done with the intent of creating a false impression of the actual facts, with the intent that Mr. Oulman take a course of action he would not take if he knew the actual facts.  In deciding to sell the assets, WeBuyHosts and Mr. Oulman relied upon the belief that Netfronts and Mr. Marks would transfer the existing clients to Netfronts' and Mr. Marks' federal tax identification numbers and account and cease using Mr. Oulman's PayPal Account.  Mr. Oulman's reliance was justified.

33. Continuously throughout 2011-2012, however, Netfronts and Mr. Marks' then processed their client's payments through Mr. Oulman's Paypal Account, but deposited the client payments into Netfronts and Mr. Marks' Wells Fargo Savings Account #9104.

34. Thus, Netfronts and Mr. Marks processed these payments through Mr. Oulman's PayPay Account and attributed the income to Mr. Oulman's Social Security Number on at least 24 occasions, including $2,373.38 in January 2011, $2,216.67 in Feb. 2011, $2,043.25 in March 2011, $2,094.21 in April 2011, $1,949.50 in May 2011, $1,703.56 in June 2011, $1,942.83 in July 2011, $1,832.98 in August 2011, $2,092.81 in September 2011, $1,750.75 in October 2011, $1,704.65 in November 2011, $1,252.93 in December 2011, including $1,273.79 in January 2012, $1,180.55 in Feb. 2012, $1,056.22 in March 2012, $1,128.42 in April 2012, $926.62 in

May 2012, $827.00 in June 2012, $899.24 in July 2012, $882.39 in August 2012, $1,085.08 in September 2012, $612.01 in October 2012, $686.63 in November 2012, $634.93 in December 2012.

      35.     Consequently, PayPal Inc. generated Form 1099-K that documented the income and attributed it to Mr. Oulman of $22,960.52 in 2011 and $11,192.88 in 2012. The 1099s were then sent to Netfronts and Mr. Marks' address at 1801 Wynkoop St., #707, Denver, Colorado 80202 with Nathan Oulman's named listed as the Payee. Upon receipt of the 2011 and 2012 1099s, Netfronts and Mr. Marks concealed this information from Mr. Oulman to hide their theft and misuse of Mr. Oulman's PayPal Account, identity, and Social Security Number.

      36.     The facts concealed by Mr. Marks and Netfronts were material.

      37.     Mr. Marks and Netfronts intended to deprive Mr. Oulman of the benefit of his PayPal Account, Social Security Number, and identity and concealed their use and processing of income to deprive Mr. Oulman of the benefits.

      38.     Thus, Mr. Oulman suffered damages as a result of their actions, including attorney fees and treble damages and income tax liability.

## CLAIM FOR RELIEF

(Invasion of Privacy by Appropriation against Netfronts and Chris Marks)

      39.     Mr. Oulman incorporates all prior allegations into this paragraph.

      40.     Netfronts and Mr. Marks stole and used Mr. Oulman's PayPal Account, identity and Social Security Number. Netfronts and Mr. Mark's obtained the benefit of Mr. Oulman's PayPal Account and identity by avoiding having the income attributed to Mr. Marks or Netfronts by the IRS. In addition, Netfronts and Mr. Marks obtained the benefit of using Mr. Oulman's PayPal Account without have to set up their own account or process payments through a PayPal

Account attributed to Mr. Marks and Netfronts, which also avoided liability associated with customer payments.

41. Mr. Oulman has damages caused by their theft and use of his PayPal Account, Social Security Number, and identity, including attorney fees and treble damages and additional income tax liability.

## CLAIM FOR RELIEF

(unjust enrichment, estoppel, unclean hands)

42. Mr. Oulman incorporates all prior allegations into this paragraph.

43. Netfronts and Mr. Marks received a benefit by using Mr. Oulman's PayPal Account and attributing income that they received to Mr. Oulman's tax identification numbers.

44. Netfronts and Mr. Marks did this by stealing Mr. Oulman's PayPay Accoutn, identity and Social Security Number to process client payments through PayPal.

45. Under the circumstances, it would be unjust for Netfronts' or Mr. Marks to retain the benefits.  Thus, Mr. Oulman suffered damages in the form of increased tax liability and loss of use of his PayPal Account..

46. In addition, Netfronts and Mr. Marks' identity theft prohibit them from relying upon equity to assert claims against Mr. Oulman because of their unclean hands and they must be estopped from doing so.

## CLAIM FOR RELIEF

(Pierce the corporate veil and set-off and respondeat superior)

47. Mr. Oulman incorporates all prior allegations into this paragraph.

48. Mr. Marks and Netfronts' wrongdoing alleged in the Complaint permits Plaintiff to pierce the corporate veil and hold Mr. Marks personally liable.  In addition, Mr. Marks was acting as an agent of Netfronts for all times relevant to the complaint.

49. In addition, Mr. Oulman would be entitled to a set-off for the income and tax liability that Netfronts and Mr. Marks falsely attributed to Mr. Oulman.

## **CLAIM FOR RELIEF**

(attorney fees)

50. Mr. Oulman incorporates all prior allegations into this paragraph.

51. The agreement authorizes attorney fees and costs to Mr. Oulman as the prevailing party.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Oulman prays:

A. That the Court award Mr. Oulman a judgment against Netfronts and Mr. Marks, in such sum as shall be determined to fully and fairly compensate Mr. Oulman for all general, special, incidental and consequential damages incurred, or to be incurred, by Mr. Oulman as the direct and proximate result of the acts and omissions of Defendant;

B. That the Court award Mr. Oulman his costs, disbursements and reasonable attorneys' fees and costs incurred and pre-judgment interest from the date of the accident through the trial as permitted by law and post-judgment interest;

C. That the Court award Mr. Oulman the opportunity to amend or modify the provisions of this Complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served;  and

D. That the Court awards such other and further relief as it deems necessary and proper in the circumstances.

E. Mr. Oulman's damages are in excess of $100,000.

**MR. OULMAN HEREBY DEMANDS A TRIAL TO A JURY
ON ALL ISSUES SO TRIABLE**

Respectfully submitted November 11, 2013.

By: /s/ Damian Stone
3570 E. 12th Avenue, Suite 200
Denver, Colorado 80206
ds@damianstonelaw.com
720-684-4371

## CERTIFICATE OF SERVICE

*Served on November 11, 2013 via ECF and addressed to the following:*

*Attorneys for Netfronts, Inc.*

Ryan Warren, Esq.
Thomas Wagner, Esq.
Polsinelli PC
1515 Wynkoop, Suite 600
Denver, CO 80202

☐ Fax   ☐ Mail   ☐ Delivery   ☒ ECF

/s/ Damian Stone
3570 E. 12th Avenue, Suite 200
Denver, Colorado 80206
720-684-4371