IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02314-RPM-MEH

NetFronts, Inc., a Utah Corporation

      Plaintiff and Counterclaim

Defendant,

        v.

Nathan Oulman, an Idaho resident, and WeBuyHosts, Inc.,
a Washington Corporation

      Defendants, Counterclaimants, and Third-Party Plaintiffs,

        v.

Chris Marks, a Colorado resident

      Third-Party Defendant.

---

## PLAINTIFF NETFRONTS, INC.'S MOTION TO DISMISS

---

Pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), Plaintiff and Counterclaim Defendant NetFronts, Inc. ("NetFronts"), through counsel, moves to dismiss the civil theft, fraudulent concealment, invasion of privacy, and veil piercing counterclaims asserted by Defendant, Counterclaimant, and Third-Party Plaintiff Nathan Oulman. NetFronts also moves to dismiss all counterclaims asserted by Defendant,

NetFronts also moves to dismiss all counterclaims asserted by Defendant, Counterclaimant, and Third-Party Plaintiff WeBuyHosts, Inc. ("WeBuyHosts") (collectively, Mr. Oulman and WeBuyHosts will be referred to as "Defendants"). In support of this Motion, NetFronts states:

### INTRODUCTION

This case arises from an asset purchase gone bad. NetFronts and Mr. Oulman are in the web-hosting business. Web hosting allows customers to make their own websites accessible to the public on the World Wide Web. Pursuant to a December 2010 Asset Purchase Agreement (the "APA"), NetFronts purchased approximately 3,000 web-hosting customer accounts from Mr. Oulman, who was doing business as All Reseller, Inc. ("All Reseller").

After closing the transaction, NetFronts discovered that Mr. Oulman had overstated the amount of revenue the customer accounts would generate by roughly $80,000 per year. NetFronts also discovered that in 2011 Mr. Oulman had misappropriated over $35,000 in revenue from the customer accounts NetFronts purchased from Mr. Oulman. NetFronts filed this lawsuit after efforts to reach a resolution with Mr. Oulman proved futile.

Mr. Oulman's Amended Answer, Counterclaims, and Third-Party Complaint contains counterclaims against NetFronts for: (1) breach of contract; (2) civil theft; (3) fraudulent concealment; (4) invasion of privacy; (5) unjust enrichment; (6) piercing the corporate veil; and (7) attorney fees. WeBuyHosts' Answer, Counterclaims, and Third-

Party Complaint contains counterclaims for: (1) breach of contract; (2) fraudulent inducement; (3) unjust enrichment; (4) piercing the corporate veil; and (5) attorney fees.[1]

Defendants' counterclaims turn on Defendants' erroneous allegation that NetFronts accessed Mr. Oulman's PayPal accounts for the purpose of attributing NetFronts' revenue to Mr. Oulman for tax purposes. However, as explained below, Defendants' counterclaims suffer from numerous factual and legal deficiencies. For example, the terms of the written APA govern the transfer of accounts from Mr. Oulman to NetFronts. Thus, the economic loss rule bars Mr. Oulman's civil theft and fraudulent concealment counterclaims. Moreover, Mr. Oulman instructed NetFronts to access his PayPal accounts and change the account information. By giving NetFronts written permission to NetFronts to access his PayPal accounts, Mr. Oulman waived his invasion of privacy counterclaim. Accordingly, Mr. Oulman's fraudulent concealment, theft, and invasion of privacy counterclaims should be dismissed.

Likewise, all of WeBuyHosts' counterclaims fail to state a claim upon which relief can be granted. WeBuyHosts never entered into a contract with NetFronts, so there can be no breach of contract claim. WeBuyHosts' fraudulent inducement claim also fails because WeBuyHosts cannot establish the necessary elements of the claim and because WeBuyHosts has not complied with Fed. R. Civ. P. 9(b). WeBuyHosts also

---

[1] Defendants also assert third-party claims against NetFronts' owner, Third-Party Defendant Christopher Marks, but as of the date of this Motion to Dismiss, Mr. Marks has not been served with process.

lacks standing to assert an unjust enrichment counterclaim. Additionally, because WeBuyHosts is not a party to the APA, which contains the fee-shifting clause at issue, WeBuyHosts' attorneys' fees claim must be dismissed.

Finally, the counterclaim asserted by both Defendants seeking to pierce the corporate veil of NetFronts should be dismissed because Defendants cannot plausibly establish the necessary elements of this claim.

## FACTUAL BACKGROUND

The following factual background is derived from the allegations in the counterclaims by Mr. Oulman and WeBuyHosts, which are taken as true solely for purposes of this Motion, or from documents central to or referenced in the counterclaims:

1.     NetFronts has a principal place of business at 1801 Wynkoop, #707, Denver, Colorado 80202. (Defendant Nathan Oulman's First Amended Answer, Counterclaims, and Third-Party Complaint (Doc. # 19) at p. 3 ¶ 3; Defendant WeBuyHosts, Inc.'s Answer, Counterclaims, and Third-Party Complaint (Doc. # 20) at p. 3 ¶ 3.) NetFronts is owned by Chris Marks. (Doc. # 19 at p. 3 ¶ 2; Doc. # 20 at p. 3 ¶ 2.)

2.     NetFronts and Mr. Oulman d/b/a All Reseller entered into the APA in December 2010. (*See* Doc. # 19 at p. 4 ¶ 6; Doc. # 20 at p. 4 ¶ 6.) Mr. Oulman signed

the APA as CEO of All Reseller. Mr. Marks signed the APA on behalf of NetFronts. (A true and correct copy of the APA is attached as **Exhibit A**.)[2]

3.  WeBuyHosts is not a party to the APA. (Ex. A, APA.)

4.  Under the APA, NetFronts was "required to take over and process" the client accounts of Mr. Oulman d/b/a All Reseller. (Doc. # 19 at p. 4 ¶ 8; Doc. # 20 at p. 4 ¶ 8.)

5.  The APA states that "the Seller [i.e. Mr. Oulman d/b/a All Reseller] shall deliver, or cause to be delivered, to the Purchaser [i.e., NetFronts] or its permitted assigns, the following: *** All documents, certificates, court orders and agreements reasonably necessary to transfer to the Purchaser all of Seller's right title and interest in, to and under all of the Acquired Assets . . . ." (Ex. A, APA § 2.3.1.)

6.  Prior to signing the APA, NetFronts and Mr. Marks allegedly represented that they would change over the customer subscriptions to NetFronts' and Chris Marks' accounts, but this change did not happen until March 2013. (Doc. # 19 at p. 6 ¶ 18 & p. 7 ¶¶ 30-31; Doc. # 19 at p. 6 ¶ 18 & p. 7 ¶¶ 30-31.)

7.  Prior to execution of the APA, Mr. Oulman "had a significant amount of customer subscriptions that operated through Mr. Oulman's PayPal Account." (Doc. # 19 at p. 4 ¶ 10; Doc. # 20 at p. 4 ¶ 10.)

---

[2] Although the APA is not attached to the counterclaims asserted by Defendants, it is central to the counterclaims and thus, the Court may consider it in deciding this Motion to Dismiss. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) (affirming district court's decision to consider document central to, but not referenced in, plaintiff's complaint when granting motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

8.      A PayPal account is established using a social security number. (Doc. # 19 at p. 4 ¶ 9; Doc. # 20 at p. 4 ¶ 9.)

9.      After the sale of the customer accounts to NetFronts, Mr. Oulman gave written NetFronts permission to access Mr. Oulman's various PayPal accounts to change the customer account payments. (Doc. # 19 at p. 4 ¶ 11; Doc. # 20 at p. 4 ¶ 11; see also December 22, 2010 email Mr. Oulman to Mr. Marks, attached as **Exhibit B**.)[3]

10.     Mr. Oulman emailed NetFronts and provided PayPal account login information and passwords. (Ex. B, Dec. 22, 2010 email to C. Marks.) Mr. Oulman instructed NetFronts to "login and change the bank info to yours [i.e., NetFronts' bank info] so that the deposits come into your account and contact info." (Ex. B, Dec. 22, 2010 email to C. Marks.)

11.     Per Mr. Oulman's instruction, NetFronts changed the bank account information for certain PayPal accounts so that customer account payments would be routed to NetFronts' bank account. NetFronts then controlled the PayPal accounts and deposited customer payments into NetFronts' bank account. (Doc. # 19 at pp. 4-5 ¶¶ 12 & 14; Doc. # 20 at pp. 4-5 ¶¶ 12 & 14.)

12.     PayPal generated 1099-K forms identifying Mr. Oulman as the payee of the revenue that went to NetFronts, but listing NetFronts' business address. (Doc. # 19 at p. 5 ¶ 16; Doc. # 20 at p. 5 ¶ 16.)

---

[3] Once again, this email is central to Defendants' allegation that Mr. Oulman gave NetFronts' permission to access Mr. Oulman's PayPal account. Accordingly, the Court may consider this email in deciding this Motion to Dismiss. See Berneike, 708 F.3d at 1146.

13.   After discovering the discrepancy between the payee and addressee, PayPal canceled all subscriptions associated with Mr. Oulman's social security number. (Doc. # 19 at p. 6 ¶ 18; Doc. # 20 at p. 6 ¶ 18.)

14.   NetFronts then sent an email to the holders of canceled PayPal subscriptions and switched active customers to new payment accounts not affiliated with Mr. Oulman. (Doc. # 19 at p. 6 ¶ 18; Doc. # 20 at p. 6 ¶ 18.)

## LEGAL STANDARD

Federal Rule 12(b)(6) permits courts to dismiss claims when those claims fail to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing and quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claimant must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. Courts should take the context of the claims into account when determining whether a claimant has pleaded a plausible claim for relief. *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010) (referencing *Iqbal*).

Although courts should accept allegations of fact as true, legal conclusions couched as factual allegations need not be accepted. *Twombly*, 550 U.S. at 555. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Moreover, although a Rule 12(b)(6) motion normally looks to the contents of the pleading, in deciding a motion to dismiss, courts can consider: (1) documents incorporated by reference in the complaint; (2) documents referred to in the complaint if the documents are central to the claim and indisputably authentic; and (3) matters of which courts may take judicial notice. *See Gee*, 627 F.3d at 1186 (citing cases).

As explained below, Defendants cannot survive this standard of review.

## ARGUMENT

I.    **MR. OULMAN'S CIVIL THEFT, FRAUDULENT CONCEALMENT, AND INVASION OF PRIVACY COUNTERCLAIMS SHOULD BE DISMISSED.**

A.    Mr. Oulman's Civil Theft and Fraudulent Concealment Counterclaims are Barred by the Economic Loss Rule.

"[T]he economic loss rule is intended to maintain the boundary between contract law and tort law." *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1259 (Colo. 2000). The economic loss rule prevents cases from being "recast as tort cases in order to escape the limitations that the law has placed on suits for breach of contract." Richard A. Posner, *Common-Law Economic Torts: An Economic and Legal Analysis,* 48 Ariz. L. Rev. 735, 745 (2006) (quoted in *Makoto USA, Inc. v. Russell*, 250 P.3d 625, 629 (Colo. App. 2009)). Under the economic loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma*, 10 P.3d at 1259. As relevant here, the economic loss rule bars claims for civil theft and fraud if the duties giving rise to the claims are not independent of the relevant contractual duties.

*See Makoto*, 250 P.3d at 628 (applying economic loss rule to civil theft claim); *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 295 (Colo. App. 2009) (applying economic loss rule to post-contractual fraud claim).

Application of the economic loss rule is a matter of law. *See Makoto*, 250 P.3d at 627.

In this case, the economic loss rule bars Mr. Oulman's fraudulent concealment and civil theft counterclaims because these counterclaims arise solely from duties created by the APA. Mr. Oulman alleges NetFronts fraudulently performed its duties in transferring customer accounts from Mr. Oulman to NetFronts. (Doc. # 19 at p 7-9 ¶¶ 29-38.) Mr. Oulman also alleges that NetFronts' concealment of its actions resulted in a theft of Mr. Oulman's account information. (Doc. # 19 at p 7-9 ¶¶ 29-38.) Yet, section 2.3 of the APA expressly governs transfer of the customer accounts. (*See* Factual Background ¶¶ 4-5, *see also*, Ex. A, APA § 2.3 (requiring Mr. Oulman to deliver all documents reasonably necessary to transfer the relevant customer accounts to NetFronts).) Mr. Oulman acknowledges that the APA governs NetFronts' actions in transitioning the accounts when Mr. Oulman alleges that the implied covenant of good faith and fair dealing in the APA governs NetFronts' use of Mr. Oulman's account information. (*See* Doc. # 19 at p. 7 ¶ 27.)

When theft or fraud claims are inextricably intertwined with a breach of contract claim, the economic loss rule requires dismissal of the tort claims. *Makoto*, 250 P.3d at 629 (distinguishing *Rhino Fund, LLLP v. Hutc*hins, 215 P.3d 1186 (Colo.App.2008)).

Here, a comparison of Mr. Oulman's breach of contract claim with Mr. Oulman's theft and fraudulent concealment counterclaims proves that the theft and fraudulent concealment counterclaims are intertwined with Mr. Oulman's breach of contract counterclaim. For example, Mr. Oulman alleges that NetFronts breached the covenant of good faith and fair dealing in the APA by "stealing" and using "Mr. Oulman's PayPal account and identity." (Doc. # 19 at p. 7 ¶ 27.) In support of his theft claim, Mr. Oulman makes the virtually identical allegation that NetFronts "intended to deprive Mr. Oulman of the benefit of his PayPal Account, Social Security Number, and identity and concealed their use and processing of income to deprive Mr. Oulman of the benefits." (Doc. # 19 at p. 9 ¶ 37 (capitalization in original).) Likewise, Mr. Oulman alleges that NetFronts committed fraudulent concealment by hiding and misusing "Mr. Oulman's PayPal Account, identity, and Social Security Number." (Doc. # 19 at p. 9 ¶ 35 (capitalization in original).) Thus, Mr. Oulman's fraudulent concealment and theft counterclaims rely on the exact same conduct as his breach of contract counterclaim.

Regarding damages, Mr. Oulman is unclear on the relief he seeks, but in his breach of contract counterclaim, on the one hand, and his theft and fraudulent concealment counterclaims, on the other hand, he seeks solely monetary damages relating to the alleged misappropriation of his PayPal accounts. (*Compare* Doc. # 19 at p. 7 ¶ 28 (seeking "damages" for breach of contract) *with* p. 9 ¶ 38 (alleging that Mr. Oulman "suffered damages" as a result of theft and fraudulent concealment).)

Moreover, Mr. Oulman's theft and fraudulent concealment counterclaims rely entirely on post-contractual actions by NetFronts, *i.e.*, the concealment of NetFronts' access to Mr. Oulman's PayPal accounts. Mr. Oulman has not alleged a single pre-contractual action by NetFronts that would support his theft or fraudulent concealment counterclaim. Thus, under *Hamon*, Mr. Oulman's fraudulent concealment claim should be dismissed. 229 P.3d at 235.

Put simply, Mr. Oulman cannot prove his theft and fraudulent concealment counterclaims without also proving his breach of contract counterclaim. Thus, Mr. Oulman's theft and fraudulent concealment counterclaims are barred by the economic loss rule. *See Makoto*, 250 P.3d at 629 (theft); *Hamon*, 229 P.3d at 295 (fraud).

B.     Mr. Oulman's Consent Precludes His Counterclaim for Invasion of Privacy.

Colorado recognizes a cause of action for invasion of privacy by appropriation. *See generally Joe Dickerson & Assocs., LLC v. Dittmar*, 34 P.3d 995 (Colo. 2001). The most common type of claim for invasion of privacy by appropriation "is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose." Restatement (Second) of Torts § 652C cmt. b.

This claim requires a claimant to establish four elements:

1.     The defendant used the claimant's name, likeness, or identity;

2.     Use of the plaintiff's name, likeness, or identity was for the defendant's own purposes or benefit;

3.     The plaintiff had damages; and

11

4.      The defendant's use of the plaintiff's name, likeness, or identity was a cause of the plaintiff's damages.

*Joe Dickerson*, 34 P.3d at 1002; *see also* CJI-Civ. 28:4 (2013 ed.).

Consent by the aggrieved party to the alleged invasion of privacy precludes a claim for invasion of privacy. *See Sundheim v. Board of County Comm'rs*, 904 P.2d 1337, 1351 (Colo. App. 1995) *aff'd on other grounds* 926 P.2d 545 (1996).

In this case, Mr. Oulman gave NetFronts written consent to access his PayPal account and change the account profile so that payments would go to NetFronts. For example, the APA requires Mr. Oulman to deliver all documents necessary to transition the customer accounts from Mr. Oulman to NetFronts. (*See* Ex. ___, APA § 2.3.) Mr. Oulman alleges that he ran many of his customer accounts through PayPal and thus, by signing the APA requiring him to deliver all documents necessary to transition those customer accounts, Mr. Oulman authorized NetFronts to access Mr. Oulman's PayPal accounts and change the bank account information.

Indeed, approximately two weeks after signing the APA, Mr. Oulman emailed Mr. Marks with the passwords to Mr. Oulman's PayPal account. (*See* Ex. ___, Dec. 22, 2010 email.) Mr. Oulman told Mr. Marks to "change all the bank info" to NetFronts' accounts. (*Id.*) In other words, Mr. Oulman explicitly instructed NetFronts to engage in the very conduct that Mr. Oulman now claims was an invasion of his privacy. Mr. Oulman's consent to the action he complains requires dismissal of this counterclaim.

II.   **WEBUYHOSTS' COUNTERCLAIMS FAIL TO STATE A PLAUSIBLE CLAIM FOR RELIEF.**

A.   WeBuyHosts' Breach of Contract Counterclaim Should be Dismissed.

A claim for breach of contract, including breach of the implied duty of good faith and fair dealing, requires a claimant to establish the following elements:

1.   The existence of a contract;

2.   Performance by the claimant or justification for non-performance;

3.   Failure to perform by the defendant; and

4.   Resulting damages to the claimant.

See *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (listing elements of breach of contract); *see also Colorado Interstate Gas v. Chemco*, 833 P.2d 786, 792 (Colo. App. 1991) (noting that claim for breach of implied duty of good faith and fair dealing does not give rise to independent claim).

In this case, WeBuyHosts' has not identified another agreement aside from the APA. Thus, the only contract at issue is the December 2010 APA. However, the APA is between "NetFronts, Inc., a company established in Colorado (the "Purchaser"), and All Reseller, Inc., a company incorporated under the laws of the State of Washington (the "Seller") . . . ." (Ex. A, APA at 1.) Mr. Oulman signed the APA as CEO of All Reseller, not in any capacity for WeBuyHosts. (*See* Ex. A, APA at 13.) WeBuyHosts is never mentioned in the APA. Thus, WeBuyHosts cannot plausibly establish the first element of its breach of contract counterclaim and this counterclaim should be dismissed.

B.     WeBuyHosts' Fraudulent Inducement Counterclaim Should Be Dismissed.

a.     *WeBuyHosts Cannot Establish the Necessary Element of Reliance.*

"To establish fraud, the plaintiff must show the defendant made a false representation of a material fact, knowing that representation to be false; that the person to whom the representation was made was ignorant of the falsity; that the representation was made with the intention that it be acted upon; and, that the reliance resulted in damage to the plaintiff." *Coors v. Security Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005).

Here, WeBuyHosts alleges NetFronts' pre-contractual representation regarding transfer of the accounts induced WeBuyHosts to sell its assets, which caused WeBuyHosts damages. However, as established above, the APA is a contract between NetFronts and All Reseller, not WeBuyHosts. Thus, WeBuyHosts never actually sold any assets in reliance on NetFronts' supposedly fraudulent representation. Because WeBuyHosts cannot plausibly demonstrate that it took actions in reliance on the supposed misrepresentation by NetFronts, WeBuyHosts' fraudulent inducement claim should be dismissed.

b.     *WeBuyHosts Does Not Comply With Fed. R. Civ. P. 9(b).*

Federal Rule 9(b) states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This rule requires – at a minimum – a claimant to plead the "who, what,

when, where, and how of the alleged fraud." *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006) (citing and quoting *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). Thus, a claimant must identify "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Sikkenga*, 472 F.3d at 727 (citing and quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).

Here, WeBuyHosts has made only one vague allegation regarding the supposedly false statement that induced WeBuyHosts to act. WeBuyHosts fails to state when the supposed representation was made, how it was made (*e.g.*, in writing or orally), the exact contents of the representation, or to whom the representation was made. WeBuyHosts' only allegation is that "NetFronts and Chris Marks represented that they would change over the customer subscriptions to NetFronts' and Chris Marks' accounts." (Factual Background ¶ ___.) This single, non-particular allegation is not sufficient to survive under Fed. R. Civ. P. 9(b) and the claim should be dismissed. *See Sikkenga*, 472 F.3d at 727.

      c.     *Fraud Cannot Be Premised On Statements Of Future Opinion.*

"Fraud requires more than the mere nonperformance of a promise or the failure to fulfill an agreement to do something at a future time." *Nelson v. Gas Research Institute*, 121 P.3d 340, 343 (Colo. App. 2005). Unless WeBuyHosts can establish that NetFronts deliberately falsified its intentions, "statements of future events are not

actionable." *Id.* (citing *Brody v. Bock*, 897 P.2d 769, 776 (Colo. 1995)); *see also Rohr v. Allstate Fin. Servs.,* 2013 WL 3746147, 5*-6* (10th Cir. July 18, 2013) (affirming summary judgment that dismissed fraud claim when alleged misrepresentations concerned predictions rather than statements of existing fact).

In this case, WeBuyHosts has not alleged that NetFronts made any misrepresentations of existing fact. Rather, WeBuyHosts alleges that NetFronts misrepresented what might happen in the future, *i.e.,* that NetFronts would transition the customer accounts by changing the customer subscriptions. (Factual Background ¶ 6.) Even assuming that NetFronts made this representation, NetFronts' representation was not an actionable statement of material fact because it merely relayed a potential future action.

The alleged representation in this case is similar to the representation in *Nelson*, a case in which the Colorado Court of Appeals affirmed summary judgment dismissing the plaintiff's claim. *See* 121 P.3d at 344-45 (representation that "block of stock" had been set aside and that plaintiff would become eligible for stock if he moved to Colorado not tantamount to representation that plaintiff would receive stock). This Court should follow *Nelson* and myriad other cases dismissing fraud claims when the sole basis for fraud is forward-looking statements of intent, and not statements of material fact.

C.    WeBuyHosts's Unjust Enrichment Counterclaim Should Be Dismissed.

"The test for recovery under an unjust enrichment theory requires a showing that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that

16

would make it unjust for defendant to retain the benefit without paying." *Robinson v. Colorado State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008) (citing *DCB Constr. Co., Inc. v. Century City Dev. Co.*, 965 P.2d 115, 119 (Colo. 1998)).

In this case, WeBuyHosts alleges that NetFronts' used ***Mr. Oulman's*** PayPal account and social security number. (Factual Background ¶ 12.) Thus, NetFronts alleged enriched itself at Mr. Oulman's expense. However, WeBuyHosts does not allege that NetFronts used WeBuyHosts' tax id number or PayPal account. Thus, WeBuyHosts cannot plausibly establish the first element of its unjust enrichment claim because it suffered no expense as a result of NetFronts' actions in accessing Mr. Oulman's PayPal account. Accordingly, the unjust enrichment claim should be dismissed.

D.    WeBuyHosts Has No Basis to Recover Attorneys' Fees.

Colorado follows the American Rule of attorneys' fees and thus, "in the absence of a statute, court rule, or private contract to the contrary, attorney fees are not recoverable by a prevailing party in either a contract or a tort action." *Harwig v. Downey*, 56 P.3d 1220, 1221 (Colo. App. 2002).

Here, WeBuyHosts alleges a claim for attorneys' fees, but the sole basis for attorneys' fees is the fee-shifting provision in the APA. (*See* Doc. # 20 at p. 10 ¶ 48.) As established above, however, WeBuyHosts is not a party to the APA. Thus, WeBuyHosts cannot avail itself of the fee-shifting clause in that contract. *See Harwig* 56, P.3d at 1221.

17

III.     **DEFENDANTS' VEIL PIERCING COUNTERCLAIM SHOULD BE DISMISSED.**

"[A] corporation is always a separate entity distinct from its officers, directors, or investors." *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003) (citing *Newport Steel Corp. v. Thompson,* 757 F. Supp. 1152, 1156 (D. Colo. 1990)). Thus, the corporate veil cannot be pierced without a showing of exceptional circumstances. *See Micciche v. Billings*, 727 P.2d 367, 372-73 (Colo. 1986) (noting that corporate structure may be disregarded only when the form used improperly and doing so is necessary to avoid unfair results); *see also Leonard*, 63 P.3d at 330.

Courts should conduct a three-part inquiry before piercing the corporate veil. *McCallum Family LLC v. Winger*, 221 P.3d 69, 74 (Colo. App. 2009). First, courts must determine whether a corporate entity is the alter ego of the shareholder. *Id.* This Court has identified eight factors that should be considered when deciding whether a corporation is an alter ego. *Newport Steel*, 757 F. Supp. At 1157. Those factors are:

> (1) whether the corporation is operated as a separate entity, (2) commingling of funds and other assets, (3) failure to maintain adequate corporate records, (4) the nature of the corporation's ownership and control, (5) absence of corporate assets and undercapitalization, (6) use of the corporation as a mere shell, (7) disregard of legal formalities, and (8) diversion of the corporation's funds or assets to noncorporate uses.

*Id.*

Second, courts must determine that justice requires piercing the veil because the corporate fiction was used "to defeat public convenience, or to justify or protect wrong, fraud, or crime, or in other similar situations where equity requires." *Reader v. Dertina & Assocs. Mktg., Inc.,* 693 P.2d 398, 399 (Colo. App. 1984). Third, courts must consider

whether an equitable result will be achieved by holding the shareholder liable for the acts of the corporation. *McCallum*, 221 P.3d at 74. A claimant must satisfy all three prongs before the veil can be pierced. *Id.*

In this case, the sole allegation that could plausibly relate to a claim for piercing the corporate veil is that NetFronts is owned by Mr. Marks. (Factual Background ¶ 1.) Aside from this allegation, Defendants have not alleged a single fact that would plausibly suggest that they are entitled to pierce NetFronts' corporate veil. On the contrary, Defendants cannot satisfy a single prong of the veil-piercing test.

Regarding the first prong, Defendants cannot establish that NetFronts is the alter ego of Mr. Marks. For example, Defendants have not pleaded any facts showing that:

- Mr. Marks failed to operate NetFronts as a separate entity;

- Mr. Marks commingled the funds of NetFronts with his own funds;

- Mr. Marks failed to maintain adequate corporate records;

- NetFronts is owned or controlled in an improper manner;

- NetFronts lacks adequate corporate assets or capitalization;

- Mr. Marks used NetFronts as a mere shell;

- NetFronts disregarded corporate formalities; or

- Mr. Marks diverted NetFronts' funds or assets for noncorporate use.

*Newport Steel*, 757 F. Supp. At 1157.

Defendants also have not satisfied the second prong of the veil-piercing claim because Defendants have not alleged any facts suggesting that Mr. Marks used

19

NetFronts' corporate form to perpetrate a fraud. For example, Defendants have not alleged that Mr. Marks fraudulently transferred funds to or from NetFronts to avoid paying Defendants or another creditor. Even if Defendants' allegations are taken as true, and Mr. Marks wrongfully accessed Mr. Oulman's PayPal account, the fact that Mr. Marks accessed Mr. Oulman's PayPal account, without more, does not imply that Mr. Marks used NetFronts' corporate form to commit the wrongful acts.

Defendants also cannot establish the third, equitable prong of the veil-piercing test because Mr. Oulman expressly instructed NetFronts to access his PayPal accounts and change the bank account information. (*See* Ex. B, Dec. 22 email to C. Marks.) On the contrary, it would be inequitable to hold Mr. Marks personally liable for NetFronts' actions when Mr. Marks was merely following Mr. Oulman's instructions by transferring the PayPal accounts to NetFronts' bank account.

Accordingly, Defendants' veil piercing counterclaims should be dismissed.

## CONCLUSION

For the reasons above, NetFronts requests that the Court dismiss with prejudice the civil theft, fraud, invasion of privacy, and veil-piercing counterclaims asserted by Mr. Oulman, as well as all counterclaims asserted by WeBuyHosts.

Dated this 25th day of November, 2013.

Respectfully submitted,

By: /s/ Thomas H. Wagner
      Ryan E. Warren, #33605
      Thomas H. Wagner, #38135
      Polsinelli PC
      1515 Wynkoop, Suite 600
      Denver, CO 80202
      Telephone:  303.572.9300
      Facsimile:  303.572.7883
      Email:  rwarren@polsinelli.com
             twagner@polsinelli.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of November, 2013, a true and correct copy of the foregoing document was served on the person(s) named below by CM/ECF:

Damian Stone, Esq.
The Law Office of Damian Stone, P.C.
3570 E. 12th Ave., Suite 200
Denver, CO 80206
ds@damianstonelaw.com

Counsel for Nathan Oulman and WeBuyHosts, Inc.

/s/ Thomas H. Wagner
Thomas H. Wagner