## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02314-RPM-MEH

NETFRONTS, INC., A UTAH CORPORATION, A RESIDENT OF COLORADO

    Plaintiff(s)

v.

WEBUY HOSTS, INC., A WASHINTON CORPORATION, AND
NATHAN OULMAN

    Defendant(s)/Third-Party Plaintiff

CHRIS MARKS, A RESIDENT OF COLORADO

    Third-Party Defendant

___

### DEFENDANT WEBUY HOSTS, INC. AND NATHAN OULMAN'S RESPONSE TO PLAINTIFF NETFRONTS, INC.'S MOTION TO DISMISS
___

Defendants WeBuy Hosts, Inc. and Nathan Oulman's ("Defendants") Response to Plaintiff Netfronts, Inc.'s Motion to Dismiss.

### SUMMARY

Defendants challenge the authenticity of the APA contract attached by Plaintiff because it is incomplete. Thus, the Court must accept Defendants' allegations as true. Regardless, Defendants have presented sworn testimony that the APA was between Netfronts and WeBuy Hosts, Inc. and there is no such entity named "Reseller," which is consistent with the identity of the defendants named in this action by Plaintiff.

As there are two different defendants with separate claims, the economic loss rule does not bar the civil theft and tort claims against Plaintiff. More importantly, the contract did not

transfer, and could not transfer, Mr. Oulman's PayPal Account or Social Security Number. Moreover, the arguments raised by Plaintiff are issues of fact lare eft to the determination of the find of fact. Nonetheless, Defendants pled sufficient facts and elements to meet the notice pleading requirement. Further, the sworn testimony submitted by Defendants rebuts Plaintiff's arguments and raises questions of fact. If not, counsel for Defendants has attached a Rule 56(f) Affidavit that requests additional time to conduct discovery to rebut Plaintiff's allegations. In the alternative, Defendants also request to amend the complaint to correct any deficiencies.

### **STANDARD OF REVIEW UNDER FED. R. Civ. P. 12(b)(5)**

Defendants dispute the aunthenticity of the APA attached to Plaintiff's Motion to Dismiss. (Affidavit Oulman, Ex. 1.) Thus, the Court cannot consider the APA attached to the Motion to Dismiss and the Court must accept Defendant's allegations as true. Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010); see also Pl.'s. MTD at p. 8.

Under Rule 8(a)(2), a pleading must contain "a short and plaint statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). With respect to a Rule 12(b)(6) motion, a Court cannot consider matters outside the complaint. F.R.C.P. 12(d); see also MER, LLC v. Comercia Bank, F.Supp2d, 2013 WL 539747 (D. Colo. 2013).

In this case, Netfronts reliance upon documents outside the Complaint changes the Motion to Dismiss to a Motion for Summary Judgment. See also W. Beck, Inc. v. E3 Consulting, LLC, 577 F.3d 1133, 1136 (10th Cir. 2009). Defendants, however, needs additional time to conduct discovery and engage in depositions to provide affidavits in rebuttal to the Motion for Summary Judgment. (Affidavit Stone, Ex. 2.) As authorized by F.R.C.P. 56(f), Defendants submit the attached affidavit of undersigned counsel that Defendants cannot present

additional facts essential to justify its opposition until after engaging in discovery. (Affidavit, Ex. 2.)

Nonetheless, in reviewing a motion to dismiss, the court "accept[s] the factual allegations in the complaint as true and we resolve all reasonable inferences in the plaintiff's favor. The Federal Rules of Civil Procedure require only that the pleadings give a defendant notice of the nature of the claims against him. Dismissal under Rule 12(b)(6) is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice. Dismissal for failure to state a claim is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Morse v. Regents of University of Colorado, 154 F.3d 1124, 1126 (10th Cir. 1998) (internal citations and quotations omitted).

The Court employs a two-party analysis when evaluating the sufficiency of a factual pleading under Rule 12(b)(6). First, the complaint must have sufficient factual assertions "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). Second, the court disregards the conclusion and analyzes the "well-pleaded factual allegations, [] assumes their veracity and then determine[s] whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Finally, if the court were to find the pleading factually deficient, Fed Civ. P. 15(a) requires that leave to amend a pleading be "freely given," and outright dismissal of an ill-pled Complaint should be limited to circumstances where granting leave to amend would be futile because no possible repleading could cure the defect, or where otherwise allowing leave to

amend would be unjust. See e.g. Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2006).

## REBUTTAL TO PLAINTIFF'S FACTUAL BACKGROUND

At the outset, the Court should take notice of the named Defendants, i.e. WeBuy Hosts, Inc. a Washington Corporation and Nathan Oulman. Plaintiff did not name an entity called "Reseller" as a party although Plaintiff mentions this entity in the Motion to Dismiss. Defendants do not consent and object to Plaintiff's failure to properly add and name the party defendants to this litigation.

In addition, Defendants provide the following additional rebuttal to Defendants' alleged facts.

**REBUTTAL NO. 1.**

**Plaintiff's Fact Paragraph 2:** Plaintiff claims Mr. Oulman was doing business as "All Reseller" in an individual capacity and entered into the APA contract.

**Rebuttal:** Plaintiff drafted the APA and used a pseudonym to refer to WeBuy Hosts, Inc. Plaintiffs has now developed a meritless theory that the contract was with Mr. Oulman operating as Reseller to try and create personal liability for Mr. Oulman for the purpose of getting around the corporate shield created by WeBuy Hosts, Inc.'s corporate identity. First, Plaintiff's allegations are incongruent with the defendants that Plaintiff named as Defendants in this civil action – i.e. WeBuy Hosts, Inc. and Nathan Oulman.

Second, Mr. Oulman has testified that the term "Reseller" used in the contract refers to the corporate entity, WeBuyHost, Inc. (Aff. Oulman at ¶ 4, Ex. 1.) Mr. Oulman testified that he has never operated a business called Reseller and Plaintiff's contacted

Defendants for the sole purpose of buying WeBuy Hosts, Inc. Id. at ¶¶ 5-6.  The contract was between Netfronts and WeBuy Hosts, Inc. Id. at ¶ 7.  In fact, Plaintiff and Chris Marks sent Defendants emails during the purchase negotiations that state in the subject line "webuys hosts inc. for sale."  (Aff. Oulman at ¶8, Ex. 1; Emails & Ex. A referenced in Affidavit, Ex. 3.)   In fact, Defendants' Answers denied the allegations in Plaintiff's Complaint related to Reseller.  (Doc. #19 - #20 at ¶¶ 2-3.)

**REBUTTAL NO. 2**.

**Plaintiff Paragraph 9:**  Plaintiff claims that Mr. Oulman gave Netfronts' Mr. Oulman's Paypal Account.

**Rebuttal:**  To the contrary, Plaintiff was given access to the PayPal Account in order to shift the customer accounts to Netfront's PayPal Account.   (Aff. Oulman at 13, Ex. 1.) Without Defendants' knowledge, Plaintiff failed to shift the customer accounts.  Instead, Plaintiff and Chris Marks stole Mr. Oulman's PayPal account, excluded Mr. Oulman's access, and inputted Plaintiff's banking account number so that the income to go to Plaintiff while being attributed to Defendant Oulman. (Aff.  Oulman at ¶¶ 15-17, Exhibit 1.)

## LEGAL ANALYSIS

As Defendants deny the authenticity of the APA relied upon by Plaintiff, this Court has to accept Defendants' allegations as true.  Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010);  (Aff. Oulman at ¶2, Ex. 1.)  Moreover, Defendants have provided sworn testimony that the use of the pseudonym "Reseller" in the APA referred to WeBuy Hosts, Inc.  (Aff. of Oulman at ¶¶1-8, Ex.

5

1.) The contract is between Plaintiff Netfronts and WeBuy Hosts, Inc. and Mr. Oulman's claims are separate and distinct from WeBuy Hosts, Inc.'s claims.  Id.

**A.** **The economic loss rule does not bar Mr. Oulman's claims because the contract did not transfer his PayPal Account to Plaintiff and the contract was between Netfronts and WeBuy Hosts, Inc.**

To begin, Plaintiff failed to attach Exhibits B-D referenced in §2.3 of the APA and only produced 13 or of the 32 pages. (APA at p. 13, Ex. A to MTD.)   Thus, this Court cannot analyze that Section or the APA.  More importantly, the contract was between Netfronts and WeBuy Hosts, Inc. rather than Mr. Oulman, individually.  (Aff. of Oulman at ¶¶1-8, Ex. 1; APA at p. 13, Ex. A to MTD.)   Consequently, as Nathan Oulman is not a party to the contract, the economic loss rule does not apply to his claims.  Makoto USA, Inc. v. Russell, 250 P.3d 625, 628 (Colo. App. 2009).

Defendant Nathan Oulman can also prove his counterclaims without WeBuy Hosts, Inc. proving a breach contract.  As no entity or person can assume someone's PayPal Account or Social Security Number by contract or otherwise, it is irrelevant as to whether Plaintiff breached a contract. (Aff. Oulman at ¶¶16-18.)

Consequently, Mr. Oulman does not have to prove a breach of contract to sustain his claims arising from the theft and misuse of his PayPal Account and Social Security Number. Makato, 250 P.3d at 628 (finding the economic loss rule does not apply as a bar when the claim exists independent of contractual duties).  As acknowledged by Plaintiff, the economic loss rule does not bar claims based on independent tort duties or if the claims are independent of the contract.  (MTD at p. 8-10.)

Plaintiff cites to the APA §2.3 to support a claim that the language somehow authorized Plaintiff to take Mr. Oulman's PayPal Account and launder money through it by attributing the money to Mr. Oulman's Social Security Number rather than Plaintiff's Tax Identification Number. Section 2.3, however, refers to the Acquired Assets identified in §1.1 and defines the assets as the customer accounts, domain names, and routers. (Ex. A to MTD.)

Neither §2.3 nor §1.1 mentions Defendant Oulman's PayPal Account or Social Security Number, which cannot even be given to someone else because a PayPal Account is established and identified with someone's Social Security Number. (Aff. of Oulman at ¶17, Ex. 1.)

Unlike Makoto, the case at bar involves two Counterclaimants, WeBuys Hosts, Inc. and Nathan Oulman. WeBuy Hosts, Inc. could lose at trail on the breach of contract claim by failing to prove that it substantially performed under the contract.

This finding, however, would not preclude Defendant Oulman claims for civil theft and tort claims. Defendant Nathan Oulman could still prevail on his civil theft and tort claims because the duty to refrain from stealing and misappropriating Mr. Oulman's PayPal Account and Social Security Number exist outside of the contract because they cannot be traded or transferred to another entity or person. Thus, the economic loss rule does not apply.

Defendants, however, agree that the claims arising from the theft and misuse of of Mr. Oulman's PayPal Account and Social Security Number belong to Mr. Oulman, individually, rather than WeBuy Hosts, Inc. Thus, WeBuy Hosts, Inc. agrees that those claims are properly asserted by Mr. Oulman and should be dismissed as to WeBuy Hosts, Inc., but as there is a factual dispute as to the parties to the contract, this Court cannot make a dismissal determination at this time.

Similarly, the breach of contract action belongs to WeBuy Hosts, Inc. rather than Mr. Oulman. Thus, Defendant Oulman agrees that the contract claim is properly asserted by WeBuy Hosts, Inc. rather than Nathan Oulman, but as there is a factual dispute as to the parties to the contract, this Court cannot make a dismissal determination at this time.

**B.** **Defendant Oulman did not consent to the theft and misappropriation of his PayPal Account or Social Security Number.**

Defendant Nathan Oulman is the only Defendant to assert a claim for Invasion of Privacy by Appropriation. (Doc. #19 at 39-41.) In response, Plaintiff asserts consent as an affirmative defense on which Plaintiff bears the burden of proof. As a basis for the consent defense, Plaintiff cites to §2.3 of the APA and an email whereby Mr. Oulman provided a password to his account.

Disregarding the challenge to the authenticity of the APA, neither §2.3 or §1.1 mentions Defendant Oulman's PayPal Account or Social Security Number, which cannot even be given to someone else because a PayPal Account is established and identified with someone's Social Security Number. (Aff. of Oulman at ¶17, Ex. 1.)

Moreover, Plaintiff was given access to the PayPal Account to shift the customer accounts to Netfront's PayPal Account. (Aff. Oulman at ¶13, Ex. 1.) Without Defendant Nathan Oulman's knowledge, Plaintiff failed to shift the customer accounts. Id. at ¶16. Instead, Plaintiff and Chris Marks stole Mr. Oulman's PayPal account, excluded Mr. Oulman's access, and inputted Plaintiff's account number so that income to go to Plaintiff while being attributed to Defendant Oulman Social Security Number. (Aff. Oulman at ¶¶ 15-17, Exhibit 1.)

With this sworn testimony, Defendants have presented more than a triable issue of fact even though this Court has to accept Defendant Nathan Oulman's allegations as true. As a

result, this Court must deny Plaintiff's Motion because neither the APA language cited by Plaintiff nor Mr. Oulman's testimony support Plaintiff's arguments.

**C.      Defendant WeBuy Hosts, Inc.'s has asserted a valid breach of contract claim.**

Defendant WeBuy Hosts, Inc.'s contract claims set forth the proper elements and must be accepted as true. (Doc #20, ¶¶23-28.)

Plaintiff's sole challenge to the breach of contract action is a factual challenge that the contract did not exist. As Plaintiff named WeBuy Hosts, Inc. as a party to this lawsuit, Plaintiff's argument that WeBuy Hosts, Inc. is not a party to the contract makes little sense and borders on incomprehensible. Moreover, as Defendants have challenged the authenticity of the APA submitted by Plaintiff, Plaintiff's cannot rely upon it for purposes of Motion to Dismiss.

Nonetheless, Mr. Oulman has testified that the term "Reseller" used in the contract refers to the corporate entity, WeBuyHost, Inc. (Aff. Oulman at ¶ 4, Ex. 1.) Mr. Oulman also testified that he has never operated a business called Reseller and Plaintiff's contacted Defendants for the sole purpose of buying WeBuy Hosts, Inc. Id. at ¶¶ 5-6. The contract was between Netfronts and WeBuy Hosts, Inc. Id. at ¶ 7. In fact, Plaintiff and Chris Marks sent Defendants emails during the purchase negotiations that state in the subject line **"webuys hosts inc. for sale."** (Aff. Oulman at ¶8, Ex. 1.)  In fact, Defendants' Answers denied Plaintiff's allegations in the Complaint related to the Reseller . (Doc. #19 - #20 at ¶¶ 2-3.)

As Defendant WeBuy Hosts, Inc. has set forth counterclaims and the elements of the contract, Defendant has set forth sworn rebuttal testimony to Plaintiff's allegation, and has challenged the authenticity of the APA, Plaintiff's Motion to Dismiss fails as a matter of law.

**D.      WeBuy Hosts, Inc. has set forth a proper fraud claim.**

As set forth above, the contract was between WeBuy Hosts, Inc. and Netfronts and WeBuy Hosts, Inc. sold its assets to Netfronts. (Aff. Oulman, Ex. 1.) This defeats Plaintiff's "lack of reliance" argument that was based on the meritless claim that there was no contract with WeBuy Hosts, Inc.

Defendant WeBuy Hosts, Inc. also met the specificity requirements of Rule 9. Paragraphs 29-38 of Defendants' fraud claim sets forth in extensive detail the who, what, and where. (Doc. #20.) Plaintiff's legal analysis of the elements required for fraud are intentionally misleading and only presents one-half of the analysis.

Contrary to Plaintiff's argument, a future promise can be a basis for a fraud claim if coupled with the present intention not to fulfill the promise. Brody v. Bock, 897 P.2d 769 (Colo. 1995) (promise concerning future event coupled with present intention not to fulfill promise is actionable as fraud).

Here, WeBuy Hosts, Inc. fraud claim alleges that Plaintiff intended not to fulfill the promise of transferring the accounts. (Doc. #20 at ¶32 and 37.) Thus, WeBuy Hosts has set forth the elements of a fraud claim.

**E.      WeBuy Hosts, Inc. has set forth a proper unjust enrichment claim.**

Again, Defendant WeBuy Hosts has to meet a notice pleading standard. Here, Defendant asserts that Plaintiff was unjustly enriched due to Netfronts improper conduct. (Doc. #20 at p. 9.) In response, Plaintiff makes the bald unsupported statement that WeBuy Hosts cannot establish an expense as a result of NetFronts' actions.

To the contrary, WeBuy Hosts gave up its assets and income to Netfronts. This is an expense. Obviously, Netfronts was unjustly enriched when it received those benefits at WeBuy Hosts expense under circumstances of fraud and improper conduct. Thus, Defendant WeBuy Hosts has asserted a viable claim.

**F.** **WeBuy Hosts, Inc. has a contractual right to attorney fees as a prevailing party.**

Disregarding the challenge to the APA's authenticity and that the Court has to accept the allegations as true, WeBuy Hosts has asserted a proper contractual right to attorney fees. In response, Plaintiff acknowledges an attorney fee provision in the APA but claims WeBuy Hosts, Inc. is not a party to the contract. As an aside, by default, Plaintiff would then be acknowledging that an attorney fee provision is enforceable by Nathan Oulman against Plaintiff.

Regardless, Plaintiff's argument contradicts the fact that Plaintiff sued and named WeBuy Hosts, Inc. as a defendant. In addition, as set forth above, Defendants have presented sworn testimony that the APA was between Netfronts and WeBuy Hosts, Inc. (Affidavit of Oulman, Ex. 1; Emails, Ex. 3.) Thus, WeBuy Hosts, Inc. has presented a triable issue of fact even if the Court does not accept the allegations in the counterclaim as true.

**G.** **Veil Piercing Counterclaim.**

Defendants' veil piercing claims were asserted against Mr. Marks. Defendants have voluntarily filed Motions to Dismiss the claims against Mr. Marks before he filed an Answer. Thus, the claims are moot and dismissed.

**G.       Defendants' may amend the complaint to address any alleged deficiencies**.

If the court were to find the pleading factually deficient, Defendants move pursuant to Fed Civ. P. 15(a) to amend the counterclaims. Under Rule 15, leave to amend a pleading should be "freely given," and outright dismissal of an ill-pled Complaint should be limited to circumstances where granting leave to amend would be futile because no possible repleading could cure the defect, or where otherwise allowing leave to amend would be unjust. See e.g. Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2006)

## CONCLUSION

WHEREFORE, Defendants Nathan Oulman's and WeBuy Hosts, Inc.'s move this Court for an Order Denying Plaintiff's s Motion to Dismiss. Or, in the alternative, amend the counterclaims to cure any deficiencies.

DATED:        January 2, 2014.

THE LAW OFFICE OF DAMIAN STONE
S/ Damian Stone
Damian S. Stone, Reg. No. 34587
3570 E. 12th Avenue, Suite 200
Denver, Colorado   80206
Telephone:  (720) 684-4371
                    *Attorney for Plaintiff – Filed Electronically*

**CERTIFICATE OF SERVICE**

*Served on via ECF and addressed to the following:*

*Attorneys for Netfronts, Inc.*

Ryan Warren, Esq.
Thomas Wagner, Esq.
Polsinelli PC
1515 Wynkoop, Suite 600
Denver, CO 80202

☐ Fax   ☐ Mail   ☐ Delivery   ☒ ECF

/s/ Damian Stone
3570 E. 12th Avenue, Suite 200
Denver, Colorado 80206
                                720-684-4371