IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02314-RPM-MEH

NetFronts, Inc., a Utah Corporation

      Plaintiff and Counterclaim Defendant,

      v.

Nathan Oulman, an Idaho resident, and WeBuyHosts, Inc.,
a Washington Corporation

      Defendants, Counterclaimants, and Third-Party Plaintiffs,

      v.

Chris Marks, a Colorado resident

      Third-Party Defendant.

---

## NETFRONTS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

---

      Plaintiff and Counterclaim Defendant NetFronts, Inc. ("NetFronts"), through counsel, submits the following reply in support of its Motion to Dismiss [Doc. # 23] (the "Motion"):[1]

## PRELIMINARY STATEMENT

      Defendants agreed to voluntarily dismiss their counterclaims. (*See* Dec. 21, 2013 email, attached as **Exhibit A.**) However, in light of scheduling conflicts among counsel – Defendants' counsel has been out of the office since early January and it appears he will be out of the office until February 17, 2014 – the parties have been unable to finalize

---

[1] Defendants and Counterclaimants WeBuyHosts, Inc. ("WeBuyHosts") and Nathan Oulman (collectively, "Defendants") each filed voluntary dismissals of their respective third-party claims against Third-Party Defendant Chris Marks. Accordingly, this reply will address only the counterclaims against NetFronts because the third-party claims have been dismissed.

a stipulation of dismissal. Accordingly, while NetFronts believes the counterclaims should be dismissed voluntarily, Defendants filed a response to the Motion, so NetFronts submits the following reply brief in support of its Motion in an abundance of caution.

## SUMMARY OF THE REPLY

Defendants raise a series of meritless arguments in response to NetFronts' Motion, but none of Defendants' assertions can save their counterclaims from dismissal.

Defendants dispute the authenticity of the Asset Purchase Agreement ("APA") attached to the Motion, but they do not assert any inaccuracies in the attached contract. Nor do Defendants dispute that Mr. Oulman signed the agreement attached to the Motion. Thus, the Court should reject Defendants' attempt to create a dispute over the authenticity of the APA when, in fact, no dispute exists.

Moreover, the Court need not consider Mr. Oulman's self-serving and improper affidavit attached to the response brief because the statements in the affidavit contradict the plain language of the APA. Thus, Mr. Oulman's attempts to change the terms of the APA are barred by the parol evidence rule. Defendants also cannot convert the Motion into a motion for summary judgment because the documents attached to the Motion are central to the counterclaims.

Regarding substantive issues, Mr. Oulman asserts that because NetFronts named WeBuyHosts as a defendant in this matter, the economic loss rule does not apply to Mr. Oulman, but Mr. Oulman's assertion borders on specious. NetFront's

2

complaint names Mr. Oulman as "d/b/a All Reseller Inc." in the very first paragraph of NetFronts' Complaint and, as NetFronts establishes in the Motion, the APA clearly applies to Mr. Oulman d/b/a All Reseller, and not to WeBuyHosts. Thus, Mr. Oulman cannot escape application of the economic loss rule, and his civil theft and fraud claims must fail.

Likewise, because the APA applies to Mr. Oulman – not WeBuyHosts – WeBuyHosts' counterclaims must fail.

Defendants' Fed. R. Civ. P. 56(d) motion, which Defendants mis-label as a Fed. R. Civ. P. 56(f) motion, is also infirm because this is not a motion for summary judgment and because Defendants have failed to carry their burden to obtain relief under Fed. R. Civ. P. 56(f).

Finally, the Court should reject Defendants' request for leave to amend because the request is procedurally improper and amendment would be futile.

## ANALYSIS

## I.    THE COURT CAN CONSIDER THE APA ATTACHED TO THE MOTION.

Although courts normally accept the allegations in a complaint as true when deciding a motion to dismiss, it is well-established that courts may consider documents central to a complaint without converting a motion to dismiss into a motion for summary judgment, even if the documents are not attached to the complaint. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) (citing *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010) and *Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.,* 551 U.S. 308, 322 (2007)). The Tenth Circuit Court of Appeals has explained that: "[i]f the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F. 3d 1381, 1385 (10th Cir. 1997).

In this case, Defendants contend that the Court should not consider the APA because the APA was not attached to their counterclaims, but in urging the Court to ignore the APA, Defendants attempt to do exactly what the Tenth Circuit Court of Appeals counseled against allowing in *GFF Corp.*, *i.e.*, allowing claims to "survive a motion to dismiss simply by not attaching a dispositive document upon which [Defendants] relied." *Id.* The Court should reject Defendants' attempts to avoid the APA because it is central to their counterclaims in this lawsuit.

The Court should also reject Defendants' attempts to dispute the authenticity of the APA attached to the Motion. Defendants' sole basis for disputing the authenticity of the APA is that the contract attached to the Motion does not contain all of the exhibits that were attached to the original APA. However, NetFronts declined to attach the exhibits solely in the interest of reducing the length of the attachments to the Motion and none of the exhibits to the APA actually affect the issues raised in the Motion. Thus, the missing exhibits do not constitute a basis to ignore the APA. Nevertheless, to resolve all doubt regarding the authenticity, a complete example of the APA – with the exhibits – is attached hereto as **Exhibit B**.

The APA attached to the Motion is signed in December 2010, as alleged by Mr. Oulman in his Amended Complaint (Doc. # 19 ¶ 6), and Defendants do not dispute that the signature page attached to the Motion contains Mr. Oulman's signature. Thus, Defendants have failed to create any dispute about the authenticity of the APA and the Court should consider the APA and decide the Motion without converting it to a motion for summary judgment.

## II.   MR. OULMAN'S CIVIL THEFT COUNTERCLAIMS CANNOT SURVIVE APPLICATION OF THE ECONOMIC LOSS RULE.

Mr. Oulman does not dispute that the economic loss rule bars civil theft and fraud claims if, as in this case, the duties giving rise to the tort claims are not independent of the relevant contractual duties. *See Makoto USA, Inc. v. Russell*, 250 P.3d 625, 629 (Colo. App. 2009) (applying economic loss rule to civil theft claim); *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 295 (Colo. App. 2009) (applying economic loss rule to post-contractual fraud claim).

Instead, Mr. Oulman asserts that the economic loss rule does not apply to his civil theft and fraud counterclaims because the APA does not apply to Mr. Oulman. (Doc. # 32 at 6-7.) However, NetFronts' Motion establishes that the APA binds Mr. Oulman, not WeBuyHosts (Doc. # 23 at 13), and Mr. Oulman's own allegations belie his position. For example, Mr. Oulman alleges a breach of contract counterclaim, but the only contract identified in the pleadings is the APA. (Doc. # 19 ¶¶ 23-28.) Since Mr. Oulman does not claim to be a third-party beneficiary of the APA, Mr. Oulman cannot

now claim that he is not a party to the APA when he pleads a claim for breach of the APA.

Likewise, Mr. Oulman's civil theft and fraud claims turn on his allegation that NetFronts accessed Mr. Oulman's **_personal_** PayPal accounts, not the accounts of WeBuyHosts. (Doc. # 19 ¶¶ 13-14 (alleging that NetFronts used "Mr. Oulman's Social Security Number" and "processed . . . payments through Mr. Oulman's PayPal Account").) Mr. Oulman would not have given NetFronts access to his personal PayPal accounts if the APA only applied to WeBuyHost's assets and accounts.

The affidavit and email string attached to Mr. Oulman's response brief cannot save Mr. Oulman's civil theft and fraud counterclaims from application of the economic loss rule, either. Mr. Oulman asserts that the subject line of the email string refers to WeBuyHosts, and thus, the Court should disregard the plain language of the APA. However, under the parol evidence rule, Mr. Oulman cannot use his affidavit or the email string to contradict the plain language of the APA. *See Dish Network Corp. v. Arch Specialty Ins. Co.*, 734 F. Supp. 2d 1173, 1179 n. 7 (D. Colo. 2010) (parol evidence rule " limits the admissibility of extrinsic evidence to the extent it seeks to vary, contradict, or add to a final written contract"). Accordingly, the Court need not consider Mr. Oulman's affidavit or related email string in deciding NetFronts' Motion.

Even if the Court is inclined to consider the email string attached to Mr. Oulman's response brief, the substance of the email string proves that the APA applies to Mr. Oulman's d/b/a, All Reseller. For example,

6

- On the top of page three, Mr. Marks states: "I'm not sure we're willing to pay any premium for webuyhosts as well – we could get a similar name and do the same thing – I'm not sure the domain itself has any intrinsic value;"

  o This statement suggests that WeBuyHosts is merely a domain name that is part of the assets being sold in the APA;

- In the middle of page three, Mr. Oulman states: "does 240k sound good? *i* am getting about 225k revenue value and with servers, certain domains and all the seo work *ive* done for ***allreseller;***"

  o This statement suggests that Mr. Oulman was, in fact, selling All Reseller's assets; and

- On the bottom of page three, Mr. Marks asks about "Shared/***Reseller*** servers;"

  o This statement suggests that Mr. Marks thought he was buying servers owned by All Reseller, which is merely Mr. Oulman's d/b/a.

(*See* Doc. 32-3 at 3 (emphasis added) (punctuation and capitalization in original).)

Accordingly, the email string does not save Mr. Oulman's counterclaims from dismissal because the email string proves that Mr. Oulman d/b/a All Reseller is a party to the APA.

## III.     MR. OULMAN CANNOT STATE A CLAIM FOR INVASION OF PRIVACY.

NetFronts' Motion establishes that Mr. Oulman allowed NetFronts' to access his PayPal accounts, and permitted NetFronts to "change all the bank info . . . so the deposits come into [NetFronts} account . . . ." (*See* Doc. # 23-2.) In other words, Mr. Oulman authorized NetFronts to do exactly what Mr. Oulman now asserts is an invasion of his privacy. Mr. Oulman's express authorization precludes his claim for invasion of

privacy. *See Sundheim v. Board of County Comm'rs*, 904 P.2d 1337, 1351 (Colo. App. 1995) *aff'd on other grounds* 926 P.2d 545 (1996).

In his response brief, Mr. Oulman does dispute that he authorized NetFronts to access his accounts. On the contrary, Mr. Oulman acknowledges that NetFronts "was given access to the PayPal Account to shift the customer accounts to NetFront's PayPal Account." (Doc. # 32 at 8.) Nevertheless, Mr. Oulman now contends that he gave NetFronts only temporary access to his accounts, but Mr. Oulman's self-serving position does not change the fact that NetFronts acted with Mr. Oulman's express authority. Accordingly, Mr. Oulman cannot prove all of the necessary elements of his invasion of privacy counterclaim. *See Joe Dickerson & Assocs., LLC v. Dittmar*, 34 P.3d 995 (Colo. 2001) (listing elements of claim).

Moreover, Mr. Oulman's new assertion contradicts his December 22, 2010 email, which instructs NetFronts to change the bank account information. Nothing in Mr. Oulman's email suggests that Mr. Oulman expected NetFronts to return the accounts to Mr. Oulman. On the contrary, both the email from Mr. Oulman and the APA suggest that Mr. Oulman intended to permanently transfer access to the accounts to NetFronts so that the customer accounts would be routed in NetFronts' bank account. If, as Mr. Oulman now asserts, his grant of permission to NetFronts was only temporary, Mr. Oulman would not have waited three years to assert that claim.

Accordingly, because Mr. Oulman allowed NetFronts to access his information, he cannot now state a claim for invasion of privacy.

IV.      **WEBUYHOSTS CANNOT STATE A BREACH OF CONTRACT CLAIM.**

WeBuyHosts asserts that NetFronts' decision to name WeBuyHosts as a defendant in this lawsuit makes WeBuyHosts a party to the APA. WeBuyHosts' assertion might be true if NetFronts had asserted a breach of contract claim against WeBuyHosts, but that is not the situation here. On the contrary, NetFronts asserted its breach of contract claim against Mr. Oulman d/b/a All Reseller because All Reseller is named in the APA. Indeed, the APA does not mention WeBuyHosts anywhere except when describing the multiple domain names purchased by NetFronts. (*See* Ex. B § 1.1.2.) Thus, the Court should reject Defendants' misguided notion that naming WeBuyHosts as defendant in this lawsuit makes WeBuyHosts a party to the APA.

The Court should also reject Mr. Oulman's self-serving affidavit attached to his response brief, because under the parol evidence rule Mr. Oulman cannot contravene the language of the express, written contract with after-the-fact, litigation-specific factual assertions. *See supra.*

Accordingly, because Mr. Oulman d/b/a All Reseller is a party to the APA, WeBuyHosts cannot establish the first element of its breach of contract claim and this claim should be dismissed.

V.       **WEBUYHOSTS CANNOT STATE A FRAUD CLAIM.**

As established above and in the Motion, WeBuyHosts is not a party to the APA. Thus, WeBuyHosts cannot plausibly establish that it took any actions in detrimental

reliance on any representations made by NetFronts. This lack of reliance requires dismissal of WeBuyHosts' fraud claim.

Defendants' response also brief also fails to explain the "who, what, when, where, and how" of the alleged misrepresentations, as required by Fed. R. Civ. P. 9(b). *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006) (citing and quoting *Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir. 1997)). As noted in the Motion, WeBuyHosts only makes one vague allegation regarding the supposed fraudulent misrepresentation (*see* Doc. # 20 ¶ 30), but this lone allegation is insufficient under Fed. R. Civ. P. 9(b) because it does not state when the representation was made, how it was made, or the exact content of the representation.

Accordingly, because WeBuyHosts cannot establish the element of reliance and because WeBuyHosts' other conclusory allegations of fraud are insufficient to comply with Fed. R. Civ. P. 9(b), WeBuyHosts' fraud counterclaim should be dismissed.

## VI.     WEBUYHOSTS CONCEDES THAT IT CANNOT ASSERT A CLAIM FOR UNJUST ENRICHMENT.

WeBuyHosts alleges that NetFronts was unjustly enriched by NetFronts' alleged use of Mr. Oulman's PayPal accounts. In their response brief, Defendants acknowledge that "the claims arising from the theft and misuse of Mr. Oulman's PayPal Account and Social Security Number belong to Mr. Oulman, individually." (Doc. # 32 at 7.) Thus, WeBuyHosts' unjust enrichment claims must be dismissed.

**VII.    WEBUYHOSTS CANNOT OBTAIN ATTORNEYS' FEES UNDER A CONTRACT TO WHICH IT WAS NOT A PARTY.**

WeBuyHosts' sole claim for attorneys' fees sounds under the APA. However, as established above and in the Motion, WeBuyHosts is not a party to the APA. Thus, WeBuyHosts cannot state a claim for attorneys' fees in this matter.

**VIII.    DEFENDANTS' FED. R. CIV. P. 56(d) MOTION IS IMPROPER AND SHOULD BE DENIED.**

Defendants assert that they need additional time to respond to NetFronts' Motion under Fed. R. Civ. P. 56(f). Presumably, Defendants meant to refer to Fed. R. Civ. P. 56(d), which permits the Court to defer ruling on a motion for summary judgment until discovery can be conducted if the non-movant can satisfy the appropriate elements. *See* Fed. R. Civ. P. 56(d).[2] In this case, Defendants' request for relief under Fed. R. Civ. P. 56(d) should be denied for multiple reasons.

First, relief under Fed. R. Civ. P. 56(d) is not appropriate in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See United States v. Dynamics Research Corp.*, 441 F. Supp. 2d 259, 269 (D. Mass. 2006) (holding that former Fed. R. Civ. P. 56(f) does not apply in context of motion to dismiss); *Stark v. University of S. Miss.*, 2013 WL 5563767, *6 n. 6 (S.D. Miss. Oct. 8, 2013) ("Rule 56(d), upon which plaintiff relies, does not apply to a motion to dismiss under Rule 12(b)(6).") (quoting *Ambeau v. Jefferson Comprehensive Health Ctr. Inc.,* 2013 WL 4519703, *1 (S.D.Miss. Aug.26, 2013)). And, as explained above, the Court can consider the APA and the email

---

[2] The former Fed. R. Civ. P. 56(f) was moved to Fed. R. Civ. P. 56(d) in 2010.

attached to the Motion without converting this matter into summary judgment. Thus, rules regarding summary judgment do not apply here.

Second, D.C.COLO.LCivR 7.1(d) states that "[a] motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate document." Here, Defendants' have failed to comply with D.C.COLO.LCivR 7.1(d) by filing their Fed. R. Civ. P. 56(d) motion in their response to NetFronts' Motion.

Third, even if Fed. R. Civ. P. 56(d) did apply in this context; Defendants have not carried their burden to obtain relief. Under Fed. R. Civ. P. 56(d), a party must identify "the probable facts not available and what steps have been taken to obtain these facts." *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (citing 6 *Moore's Federal Practice* ¶ 56.24). "In this circuit, the nonmovant also must explain 'how additional time will enable him to rebut movant's allegations of no genuine issue of fact.'" *Committee for the First Amendment*, 962 F.2d at 1522 (quoting *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 537 (10th Cir. 1987)).

Defendants' affidavit of counsel does not meet these requirements. In particular, Defendants' affidavit does not describe what facts Defendants expect to uncover in discovery that would preclude dismissal of their counterclaims. Defendants assert that they need to take the depositions of NetFronts' employees in charge of billing, but Defendants do not explain what information they expect those employees to provide or how that information might preclude dismissal of Defendants' counterclaims. (*See* Doc. # 32-2 ¶ 3.) Defendants also seek "electronic data relating to emails sent and received

by Chris Marks and NetFronts," but again Defendants do not identify what facts this unidentified "electronic data" will provide to defeat NetFronts' Motion. (*See* Doc. # 32-2 ¶ 4.)

Accordingly, Defendants' request for relief under Fed. R. Civ. P. 56(d) should be denied.

## IX.     DEFENDANTS CANNOT AMEND THEIR COUNTERCLAIMS.

The Court should deny Defendants' motion to amend their counterclaims because the motion to amend does not comport with D.C.COLO.LCivR 7.1(d). *See FirsTIER Bank v. FDIC*, 935 F. Supp. 2d 1109, 1128 (D. Colo. 2013) (denying motion to amend when party included motion within a response to motion to dismiss).

Setting aside this procedural infirmity, the Court should reject Defendants' motion to amend their counterclaims because amendment would be futile. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (court may refuse to permit amendment when, among other things, amendment would be futile). Defendants cannot change the APA to make WeBuyHosts a party to that agreement. Thus, regardless of the allegations WeBuyHosts could make in an amended pleading, WeBuyHosts could not save its counterclaims from dismissal because each of WeBuyHosts' counterclaims turn on WeBuyHosts' non-existent status as a party to the APA.

Likewise, Mr. Oulman d/b/a All Reseller will remain a party to the APA regardless of any amended allegations he may make. As such, Mr. Oulman cannot plead around the economic loss rule and Mr. Oulman's civil theft and fraud claims will remain subject

13

to dismissal no matter what amended allegations he makes. Similarly, Mr. Oulman cannot revoke his consent to allow NetFronts to access his PayPal accounts by way of an amended pleading. Thus, his invasion of privacy claim will be dismissed regardless of what he alleges in an amended counterclaim.

## CONCLUSION

For the reasons above and those in the Motion, NetFronts requests that the Court dismiss the civil theft, fraudulent concealment, invasion of privacy, and veil piercing counterclaims[3] asserted by Mr. Oulman and all of the counterclaims asserted by WeBuyHosts.

Dated this 31st day of January, 2014.

Respectfully submitted,

By: /s/ Thomas H. Wagner
    Ryan E. Warren, #33605
    Thomas H. Wagner, #38135
    Polsinelli PC
    1515 Wynkoop, Suite 600
    Denver, CO 80202
    Telephone:  303.572.9300
    Facsimile:  303.572.7883
    Email:  rwarren@polsinelli.com
            twagner@polsinelli.com

---

[3] Mr. Oulman acknowledges in his response brief that these claims should be dismissed. (Doc. 32 at 11.)

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of January, 2014, a true and correct copy of the foregoing document was served on the person(s) named below by CM/ECF:

Damian Stone, Esq.
The Law Office of Damian Stone, P.C.
3570 E. 12th Ave., Suite 200
Denver, CO 80206
ds@damianstonelaw.com

Counsel for Nathan Oulman and WeBuyHosts, Inc.

*/s/ Thomas H. Wagner*
Thomas H. Wagner

15